**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| **DRILLING PRODUCTIVITY** | **CIVIL ACTION NO. 07-0842** |
| **REALIZED, LLC,** *d/b/a* | |
| *AXXIS DRILLING* | |
| | |
| **VERSUS** | **JUDGE MELANÇON** |
| | |
| **JONATHAN LOVETT** | **MAGISTRATE JUDGE METHVIN** |

*REPORT AND RECOMMENDATION ON MOTION TO DISMISS*
*(Rec. Doc. 7)*

Before the court is a motion to dismiss filed by defendant Jonathan Lovett.[1]  Plaintiff

Axxis Drilling opposes the motion.[2]  For the reasons set forth below, it is recommended that the

motion be granted and that this declaratory judgment action be dismissed.

*Background*

On October 5, 2006, Lovett was allegedly injured while working for Axxis on its drilling

barge.  On May 15, 2007, Axxis filed the instant declaratory judgment action seeking to

determine its maintenance and cure obligations to Lovett.[3]  On June 4, 2007, Lovett filed a

petition in 16th Judicial District Court, St. Martin Parish, Louisiana under the Savings to Suitors

clause, Title 28 U.S.C. § 1333, seeking damages from Axxis.  On March 4, 2008, Lovett filed the

instant motion to dismiss Axxis's declaratory judgment action.

---

[1] Rec. Doc. 7.

[2] Rec. Doc. 10.

[3] Rec. Doc. 1.  Axxis alleges that Lovett has arbitrarily and without cause refused to follow his doctors' instructions by failing to stop smoking and by failing to admit himself to the hospital for treatment to his left leg and foot. [Rec. Doc. 1, ¶ 9].

2

The bench trial before Judge Melançon is set for July 21, 2008.[4]  On June 3, 2008, the parties filed a joint motion to continue the trial on grounds that Lovett has not reached MMI.[5]

### Contention of the Parties

Lovett maintains that the declaratory judgment action should be dismissed because he has exercised his right to choose the forum where his case will be heard.  Axxis argues that would be unfair to delay the determination of its maintenance and cure obligations until the September state court trial.

### Legal Analysis

Under the Declaratory Judgment Act, a district court has a measure of discretion in deciding whether to entertain the action.  *See* 28 U.S.C. § 2201.  "Although 'the district court's discretion is broad, it is not unfettered.'" St. Paul Ins. Co. v. Trejo, 39 F.3d 585, 590 (5th Cir. 1994), *citing* Travelers Ins. Co. v. Louisiana Farm Bureau Federation, 996 F.2d 774, 778 (5th Cir.1993).  The court must consider the following factors in determining whether to entertain a declaratory action: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." Sherwin-Williams Co. v. Holmes County 343 F.3d 383, 387 (5th Cir. 2003).

There is no dispute that the declaratory action *sub judice* is justiciable.  The issue regarding whether maintenance and cure is owed is an actual controversy.

"Once the justiciability decision is made, the court must next determine whether it has the authority to grant declaratory relief. '[A] district court does not have authority to consider the

---

[4] The state court action is scheduled for a jury trial on September 15, 2008.

[5] Rec. Docs. 11-12.

3

merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in federal court; and (3) the district court is prohibited from enjoining the state proceedings under section 2283.'" Aries Marine Corp. v. Lolly, 2006 WL 681184, 2 (W.D.La. 2006), *citing* Sherwin-Williams, 343 F.3d at 388.

As noted above, Lovett filed his state court action approximately three weeks *after* the instant action, and accordingly, this court's authority to grant declaratory relief is not in question. Rather, the issue in this case is whether the court should exercise its discretion to decide or dismiss the case.

Factors relevant to determining whether to dismiss a declaratory judgment, include:

1)      whether there is a pending state action in which all of the matters in controversy may be fully litigated,

2)      whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant,

3)      whether the plaintiff engaged in forum shopping in bringing the suit,

4)      whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist,

5)      whether the federal court is a convenient forum for the parties and witnesses,

6)      whether retaining the lawsuit in federal court would serve the purposes of judicial economy, and

7)      whether  the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

St. Paul Ins. Co. v. Trejo, 39 F.3d at 590-591.

4

As to the first factor - "whether there is a pending state action in which all of the matters in controversy may be fully litigated" - plaintiff's state court action does provide a forum in which all of the matters may be fully litigated.  Lovett's state action raises the issue of maintenance and cure - the same issue presented here – as well as other issues that are not presented here.  Thus, the fact that there is a pending state court case weighs in favor of dismissal.

Axxis filed the instant case approximately seven months after Lovett's accident.  The parties dispute whether Axxis filed its suit in anticipation of a lawsuit by Lovett and engaged in forum shopping.  Axxis argues that it brought the suit after Lovett continually refused to abide by the advice of his own medical providers.[6]   Lovett argues that Axxis raced to the courthouse on a claim with a three-year statute of limitations while he was undergoing nearly daily treatment to fight an infection in his left leg to prevent a below-the-knee amputation.   According to Lovett, to allow the declaratory action to go forward would encourage future plaintiffs to race to the courthouse instead of resolving disputes amicably before the statute of limitations runs.

The situation presented does not involve conflicting opinions whether Lovett has reached maximum medical improvement[7] but instead is whether he has forfeited his maintenance and cure benefits.  A seaman's right to maintenance and cure is "forfeited by a willful rejection of the recommended medical aid." Coulter v. Ingram Pipeline, Inc., 511 F.2d 735, 737 (5th Cir.1975).  One of the main purposes of the Federal Declaratory Judgment Act was to provide a means to

---

[6] Axxis alleges in its complaint that one of Lovett's treating physicians noted on December 15, 2006 that he had discussed with Lovett his need to stop smoking repeatedly and Lovett evidently continued smoking.  Axxis also alleges that Lovett ignored his doctors' advice to be admitted to the hospital for care.

[7] In fact, the parties state in their motion to continue the trial that Lovett's treating physician has opined that Lovett has not reached maximum medical improvement.

5

grant litigants judicial relief from legal uncertainty in situations that had not developed

sufficiently to authorize traditional coercive relief.  <u>Texas Employers' Ins. Ass'n v. Jackson</u>, 862

F.2d 491, 505 (5th Cir. 1988).  In other words, litigants would no longer have to choose between

foregoing their rights or acting and then being required to wait until the statute of limitations

expired to find out if they had been subjected to some significant liability.  <u>Id.</u>

      Axxis's arguments that it filed in advance of Lovett in this court in order to determine its

rights and obligations *vis a vis* Lovett's alleged refusal of medical treatment persuade the

undersigned that Axxis was not forum shopping nor did it file its lawsuit in anticipation of

Lovett's litigation.  These factor, therefore, weigh in Axxis's favor to maintain the instant action.

      The fourth factor, concerning possible equities that may occur by allowing Axis to gain

precedence in time and to change plaintiff's forum, weighs in Lovett's favor.  To allow this

action to proceed would deprive Lovett of his choice of forum and force him to litigate his right

to continue his maintenance and cure benefits without a jury. As a Jones Act seaman, Lovett has

a right to have a jury decide all issues, including maintenance and cure.  <u>Fitzgerald v. United</u>

<u>States Lines Co.</u>, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); <u>Rowan Companies, Inc. v.</u>

<u>Blanton</u>, 764 F. Supp. 1090 (E.D.La. 1991).   Moreover, Axxis's justification for filing the

instant action - in order to receive an early determination of whether it must continue payments in

light of Lovett's alleged willful refusal to acquiesce to recommended medical treatment - is

undermined by the fact that the state court trial is scheduled for September15, 2008, only two

months after this matter's July 21, 2008 trial date.  It is now further undermined by the fact that

Axxis has now joined in a motion to continue this court's trial date to be reset at a later date.

Accordingly, the undersigned concludes that allowing Axxis's action to proceed would

6

circumvent Lovett's right to choose the forum for his suit, and the possible inequities therein, weigh in favor of dismissal.

Additional factors to consider are whether the federal court is a convenient form and whether retaining the declaratory action would serve the purposes of judicial economy.  Lovett's argument that St. Martinville is a more convenient venue is conclusory.  Both courts, state and federal, are located within the Western District of Louisiana. As such, either forum is equally convenient, and this factor is neutral in the court's decision.

As to the factor of judicial economy, Axxis argues that issues of maintenance and cure are routinely bifurcated and that it would be inequitable to assert that an employer cannot seek bifurcation of issues, especially when the employer "must look down the barrel of additional damages if it is found to have willfully and callously failed to pay maintenance and cure."[8] Axxis does not cite authority for this argument.  As the cases cited by Axxis recognize, it is the seaman and not the employer who has the right to this bifurcation.  *See* Tate v. American Tugs, Inc., 634 F.2d 869, 870-871, internal citations omitted (5th Cir. 1981) (holding that, while the seaman has the right  to join his claim for maintenance and his other general maritime law claims with his Jones Act claim, and obtain a jury trial of all of these claims, he is not obligated to do so, but may either sue separately for maintenance and cure, or, having filed one suit, ask for severance of the maintenance claim and an expedited trial of it by the court). Axxis also argues that the issues raised under the Jones Act or Lovett's unseaworthiness claims would only minimally overlap since no safety experts would testify, and the court would not hear the issue of

---

[8] Rec. Doc. 10, p. 6.

7

damages but, instead, focus on evidence whether or not Lovett willfully ignored his doctors' advice, and causation.

The undersigned disagrees.  Retaining the declaratory action would not serve the purposes of judicial economy since the pending declaratory action only addresses one issue in the case, maintenance and cure, while this same issue, as well as the issues of liability and damages raised in Lovett's Jones Act claim and unseaworthiness claims, would be addressed in state court.  Furthermore, Lovett indicates that discovery has taken place in the state court litigation, including written depositions of Lovett and his wife, and treating physicians.  Lovett also indicates that fact witnesses were scheduled for March.[9]  Clearly, allowing all issues to be tried at one time would serve judicial economy rather than the piecemeal litigation that would result if the declaratory judgment is allowed to proceed.  Therefore, the undersigned finds that the factor of judicial economy is better served by one court hearing all of the matters in controversy.

Finally, the court is not being called on to construe a state judicial decree so this factor is in favor of Axxis.

On balance, considering all of the Trejo factors and particularly noting that allowing this case to proceed would deprive Lovett of his right to a jury trial on his maintenance and cure claim, and that the trial of the instant matter is scheduled only two months in advance of the state court trial and which trial date Axxis has joined in a motion to continue, the undersigned finds that Axxis's declaratory judgment action should be dismissed.

---

[9] In the joint motion to continue the trial before Judge Melançon, the parties note that 12 physicians and health care providers have been deposed but additional time is needed to complete discovery in the instant litigation.  They also reference the state court litigation and note that there is a mediation scheduled for July, 2008 which may serve to dispose of the instant case.

*Conclusion*

Based on the foregoing, it is RECOMMENDED that Lovett's motion to dismiss be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), Fed.R.Civ.P., the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court.  Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its receipt, or within the time frame authorized by Rule 6(b) Fed.R.Civ.P., shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  <u>See Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on June 5, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)